## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Katryna L. Damgaard,**
**Individually and as Parent and**
**Natural Guardian of I.L.D.,**
1475 17th Street, Apartment 3B
Windom, Minnesota 56101

      **Plaintiffs,**

v.

**Avera Health**
SERVE PROCESS ON:
Chris Specht, Registered Agent
610 West 23rd Street, Suite 1
Yankton, South Dakota 57078,

And

**Avera McKennan**
SERVE PROCESS ON:
Chris Specht, Registered Agent
610 West 23rd Street, Suite 1
Yankton, South Dakota 57078

      **Defendants.**

**File No.:** _____

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

---

NOW COME the Plaintiffs, Katryna L. Damgaard, individually and as parent and natural guardian of I.L.D., by and through their attorney, Stephen C. Offutt and Janet, Jenner & Suggs L.L.C., and do hereby allege the following:

## INTRODUCTION

This is a complex medical malpractice action arising from substandard health care provided to Plaintiffs, Katryna L. Damgaard and her unborn child, I.L.D., on May 17, May 19 and May 20, 2010.  It involves the failure to properly manage the labor of Katryna L. Damgaard; the failure to recognize and respond to the obvious deteriorating fetal response to labor; and the failure to timely deliver her daughter, I.L.D.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Katryna L. Damgaard ("Damgaard") is the parent and natural guardian of her daughter, I.L.D., and both are residents of the State of Minnesota.

2.      Plaintiffs Damgaard and baby I.L.D. were patients of Defendants Avera Health and/or Avera McKennan, both of which are professional services corporations organized under the laws of the State of South Dakota.  Avera Health and/or Avera McKennan owned, operated, managed, supervised, and trained doctors, and created policies and protocols for Avera Medical Group Windom a/k/a Avera United Medical Clinic.  Avera Health and/or Avera McKennan employed Mary L. Olson, M.D., who was responsible for the labor management and delivery of Plaintiff I.L.D. on May 17, May 19, and May 20, 2010.

3.      As described more particularly below, the Plaintiffs contend that Defendants Avera Health and/or Avera McKennan, individually and/or by and through their actual and/or apparent agents, servants, and/or employees, including but not limited to Mary L. Olson, M.D., committed malpractice in the State of Minnesota by departing from the required standard of care and that this departure caused injury to I.L.D. and her parent, for which past medical expenses incurred in an effort to treat the malpractice-related injuries exceed $400,000.00, and that future medical and life care needs will exceed $10,000,000.00, and a loss of future earning capacity will exceed $1,000,000.00 after discount to present value, such that the special damages incurred by Plaintiffs Damgaard and I.L.D. alone exceed $11,400,000.00.

4.      There is, consistent with 28 U.S.C. § 1332, a diversity of citizenship between the above-named parties, and, therefore, this Court has jurisdiction over this matter which exceeds $75,000.00 in controversy.

5.      Since the alleged malpractice that is the subject matter of this claim occurred during the labor management and delivery of I.L.D. in Minnesota, personal jurisdiction exists

2

against Defendants Avera Health and Avera McKennan in Minnesota under Minn. Stat. § 543.19, subd. 1, and venue is appropriate in Minnesota.

## GENERAL ALLEGATIONS OF AGENCY

6.     At all relevant times, Plaintiff Damgaard was under the care of Defendants Avera Health and/or Avera McKennan and their agents, servants, and/or employees for the delivery of her daughter, I.L.D.

7.     That, on May 20, 2010, I.L.D. was born under the care and supervision of the employees, servants, and actual and/or apparent agents of the Defendants Avera Health and/or Avera McKennan, including but not limited to Mary L. Olson, M.D., and Avera Health and/or Avera McKennan personnel responsible for creating proper polices and protocols that Mary L. Olson, M.D. and others should have adhered to.  Defendants Avera Health and/or Avera McKennan at all relevant times were responsible via *respondeat superior* for the acts and omissions of said employees, servants, and actual and/or apparent agents listed above.

## FACTS

8.     Background: Katryna Damgaard at the time of her May 19, 2010 admission to the Windom Area Hospital was a 24-year-old woman at 38 and 3/7 weeks gestation.

9.     Prenatal care was provided by Avera Health and/or Avera McKennan (d/b/a Avera Medical Group Windom and/or Avera United Medical Clinic) beginning on October 8, 2009 at 6 and 3/7 weeks gestation.  An initial obstetrical ultrasound on November 23, 2009 identified the fetus as 13 and 2/7 weeks gestation, with good fetal cardiac activity and visualization of four limbs with good activity.  A second obstetrical ultrasound on January 29, 2010 identified the fetus as 22 and 3/7 weeks gestation, vertex position noted, and a fetal anatomy survey revealed normal findings.

10.     Ms. Damgaard was initially admitted to Windom Area Hospital at 1150 on May 17, 2010 at 38 weeks gestation for an attempted induction and came under the care of Avera Health and/or Avera McKennan, and their actual and/or apparent agents, servants, and/or employees, including but not limited to Dr. Mary Olson. Dr. Olson was present at admission and the primary care provider. Contractions occurred every 2-3 minutes and were noted as weak to moderate.   The fetus was in a vertical position, with moderate fetal heart rate ("FHR") accelerations and moderate to marked variability.

11.     2mu/min of Pitocin was started at 1323, and increased to 4mu/min at 1338. Pitocin remained constant until 1745, when the rate was increased to 6mu/min.

12.     At 2024 Dr. Olson reviewed the electronic fetal monitoring ("EFM") strips, checked the cervix, and recommended Ms. Damgaard be discharged with instructions to return two days later on May 19, 2010 at 1900 for a second attempt at induction and/or Cytotec induction.  At 2030, Pitocin was stopped, and Ms. Damgaard was discharged with her mother to go home.

13.     On May 19, 2010, Katryna Damgaard was admitted to Windom Area Hospital at approximately 1415.  She again came under the care of Avera Health and/or Avera McKennan, and their actual and/or apparent agents, servants, and/or employees, including but not limited to Dr. Mary L. Olson.  At that time there were contractions every two minutes which had started approximately two hours earlier.  Ms. Damgaard was 38 and 3/7 weeks gestation.  A severe deceleration appears on the EFM strip beginning shortly after admission at 1450.

14.     By 1500, Ms. Damgaard had a temperature of 100.00 F, with the fetal heart rate showing marked variability, accelerations, and periods of fetal tachycardia (periods of fetal heart rate over 160), and Dr. Olson was called and notified.  At 1515 Tylenol 650 mg PO was prescribed.

4

15.     At 1520, Dr. Olson arrived, checked the EFM strip, cervix, and at this point the FHR baseline appeared to be in the 160's with accelerations and decelerations.

16.     At 1626, a prolonged late deceleration occurred, with FHR baseline at 165.

17.     At 2015, Ms. Damgaard requested pain medication, for which Dr. Olson was called.  FHR showed a wandering baseline with marked variability, prolonged decelerations, and late decelerations.  Dr. Olson arrived at 2032, and at 2036, an artificial rupture of membranes ("AROM") was performed.  Ms. Damgaard was taken off the monitor from 2039 to 2044. Shortly after, Tylenol 650 mg PO and Zofran 4 mg are given to Ms. Damgaard with no explanation as to why.

18.     Beginning at 2136, the fetal heart monitor was unable to assess the FHR for long periods of time.

19.     At 2215, Dr. Olson returned and checked the cervix which was at 5cm.

20.     Between 2229 and 2310, the fetal heart rate continued to trace the mother's heart rate, making it impossible to ascertain the fetal well-being during those 41 minutes.

21.     At 2327, Dr. Olson again looked at the EFM strips, and checked the cervix which was noted at 6cms.  Shortly thereafter, with contractions continuing every 2-3 minutes, lasting 60-70 seconds, a FHR baseline of 156, and frequent decelerations, Dr. Olson leaves Windom Area Hospital to go home at 2354 in the face of a non-reassuring FHR.

22.     At 0036, FHR baseline climbed to 176, with additional late and variable decelerations.  Dr. Olson was called and notified of the prolonged late decelerations.

23.     At 0040, Cesarean section ("C-section") was called, and surgery was notified.  At 0045, with the FHR baseline at 170 and variable decelerations, Ms. Damgaard was informed of the pending C-section by Dr. Olson.  At 0052, Dr. Olson arrived, and Ms. Damgaard consented to the C-section to be performed by Dr. Olson.  At 0052 Ms. Damgaard was prescribed

Terbutaline 0.25 mg SQ to inhibit contractions. Ms. Damgaard was additionally given Bicitra 30 mL PO at 0102. At 0103 a 16 French Foley catheter was inserted using aseptic technique. At 0112, with irregular contractions continuing, and a FHR baseline at 170, with minimal variability, Ms. Damgaard was transferred to a wheelchair to be taken to the operating room.

24. <u>Delivery</u>: At 0136, 56 minutes after the C-section was called for, I.L.D. was delivered via C-section under spinal anesthesia by Dr. Olson, with Dr. Rodney Dynes assisting. At delivery there was meconium stained amniotic fluid; there was meconium below the cords on the first intubation, and no meconium on subsequent intubation. According to the nurse's notes, APGAR scores were assessed as 3 at 1 minute, 6 at 5 minutes, and 7 at 10 minutes.

25. <u>Neonatal</u>: I.L.D. was born at 0136 at 38 and 3/7 week gestation weighing 6 lbs, 8 oz. with abnormal, shiny skin, edematous all over. Dr. Olson's post-operative diagnosis states a spontaneous labor with failure to progress past 6cm, 0 station, and fetal distress. Meconium fluid was scant after the initial intubation of meconium stained fluid, and I.L.D. was handed off to Dr. Taber, a family practice physician who was the acting pediatrician for this delivery. The notes of Melinda Miller, R.N. indicate I.L.D. was born limp and pale. Stimulation to the baby caused her to pink up in color, but with no cry. I.L.D's general appearance showed acryocyanosis, poor suck/swallow reflexes, hyper-tonus, and her left arm elbow to finger tips remained pale and gray, with a discolored area inside her left elbow. I.L.D. additionally exhibited sternal retractions, slight nasal flaring, grunting at times, respirations great than 80 and labored at times, and wet lungs. At 0400, Dr. Olson offered I.L.D. a pacifier, but she exhibited no suck reflex, had no cry, and was jittery. At 0630, I.L.D. opened her eyes for the first time, nearly five hours after delivery, and made a minimal effort to cry. At 0722, she again made a minimal effort to cry, but no cry was noted. At 0735, I.L.D. was noted to have arched back and rigid arms and legs, which lasted 40 seconds. Phenobarbital (20mg x 3 kg) was discussed with Dr. Sam Rogers at 0830 and

a loading dose was ordered.  The IV blew out before the Phenobarbital could be given.  I.L.D. was given a full dose of Ampicillin IV (100mg/Kg/12 hours) and 10/12 mg of Gentamyzin IV (4mg/Kg/24 hours).  I.L.D. was then transferred via helicopter with the Avera Careflight Team at 1050 to the Neonatal Intensive Care Unit at Avera McKennan Hospital & University Health Center in Sioux Falls, South Dakota to the care of Dr. Sam Rogers.

## COUNT I – MEDICAL NEGLIGENCE

26.     Plaintiff Damgaard incorporates herein by reference thereto the averments contained in Paragraph 1 through 25 and realleges as though fully set forth herein.

27.     Plaintiff I.L.D., a minor child, by her parent and natural guardian, Katryna Damgaard, for her own cause of action against the Defendants Avera Health and/or Avera McKennan, individually and/or by and through their employees, servants, and actual and/or apparent agents, including but not limited to Mary L. Olson, M.D., states and alleges Defendants Avera Health and/or Avera McKennan owed a non-delegable duty to Plaintiffs I.L.D. and Katryna Damgaard to provide proper care and treatment and to use that degree of skill and diligence required of health care providers under the same or similar circumstances in the community of the health care provider or a similar community.

28.     Defendants Avera Health and/or Avera McKennan, individually and/or by and through their employees, servants, and actual and/or apparent agents owed a non-delegable duty to Plaintiffs I.L.D. and Katryna Damgaard to provide proper care and treatment and to use that degree of skill and diligence required by medical professionals, hospitals, and medical corporations generally, and under like circumstances in the same or similar community.

29.     Defendants Avera Health and/or Avera McKennan, individually and/or by and through their employees, servants, and actual and/or apparent agents, including but not limited to Mary L. Olson, M.D., breached that non-delegable duty to Plaintiff I.L.D. and her mother,

7

Katryna Damgaard, by failing to exercise such degree of skill and diligence required of health care providers under the same or similar circumstances in the community of the health care providers or a similar community and were negligent in the following particulars:

a.  Dr. Olson failed to stay involved in the labor management;

b.  Dr. Olson failed to properly and timely check the patient's status;

c.  Avera Health and/or Avera McKennan failed to adequately instruct, train, and/or supervise its agents, servants, and/or employees, including but not limited to Dr. Mary Olson;

d.  Avera Health and/or Avera McKennan failed to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for vaginal and/or cesarean section deliveries;

e.  Avera Health and/or Avera McKennan failed to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for the use of Pitocin;

f.  Avera Health and/or Avera McKennan failed to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for a conversion to cesarean section delivery;

g.  Avera Health and/or Avera McKennan failed to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols to properly manage patients, such as Katryna L. Damgaard;

h.  Dr. Olson failed to recognize and timely respond to non-reassuring fetal heart rate tracings and failure to progress;

i.  Dr. Olson failed to adequately monitor uterine activity and fetal heart rate continuously;

j.  Dr. Olson failed to implement intrauterine resuscitate measures ("IURM");

k.  Dr. Olson left the patient when it was unsafe for her to do so;

l.  Dr. Olson inappropriately was away from the patient's bedside and/or failed to review the fetal heart rate for extended periods of time;

m.  Dr. Olson failed to properly advise the nursing staff of the patient's concerning fetal heart rate tracing and status, and failed to request more follow-up status calls from the nurses, and failed to take appropriate steps to improve the tracing;

n.  Dr. Olson failed to review relevant and important parts of the tracing and medical records when she did visit the patient in person;

o.  Dr. Olson failed to provide appropriately trained and skilled medical personnel to care for Plaintiff Damgaard when she was not present at times up to and including the time of delivery;

p.  Dr. Olson failed to consult with an obstetrician and/or maternal fetal medicine specialist;

q.  During the time that she was not present, Dr. Olson failed to ensure that an obstetrician would be immediately available to review the patient's status and timely deliver on an urgent or emergent basis should the need arise;

r.  Dr. Olson inappropriately discharged her patient on May 17, 2010 under circumstances where she should have been delivered and/or carried through with the induction that was started;

s.  Dr. Olson inappropriately left the patient's bedside just before midnight under circumstances in which an obstetrician should never have left.

Having made the mistake of leaving, Dr. Olson then additionally failed to ensure an obstetrician was readily available to deliver the child when the foreseeable emergent situation did occur;

t.   Dr. Olson failed to call an emergency cesarean section on a timely basis and failed to instruct personnel to treat this as an emergency and obtain delivery sooner;

u.   Dr. Olson failed to perform an expedited delivery and/or cesarean section after prolonged fetal distress;

v.   Dr. Olson failed to consult with an obstetrician and/or maternal fetal medicine specialist on May 17, 2010 and/or May 19, 2010;

w.   Dr. Olson failed to properly monitor the patient in a number of ways, *inter alia*, her failure to timely and appropriately rupture membranes and failure to utilize an intrauterine pressure catheter;

x.   Having called an emergency cesarean section inappropriately late, Dr. Olson then failed to achieve that delivery in a timely manner;

y.   Other employees of Defendants Avera Health and/or Avera McKennan failed to timely respond to the deteriorating fetal status and to the emergent need for a cesarean section;

z.   Dr. Olson failed in other ways to manage Ms. Damgaard's condition and that of her unborn child in accordance with the applicable standard of care; and

aa.   Other negligent acts or omissions which may become apparent throughout the course of discovery.

30.     As a direct and approximate result of the aforesaid negligence of Defendants Avera Health and Avera McKennan, directly and/or through their actual and/or apparent agents, servants, and/or employees, as alleged herein, Plaintiff I.L.D. was caused to sustain severe, painful, permanent and disabling injuries including, but not limited to:

      a.      Perinatal depression;

      b.      Metabolic acidosis;

      c.      Severe neonatal asphyxia;

      d.      Hypoxic-ischemic encephalopathy;

      e.      Seizures;

      f.      Hypotonia;

      g.      Spastic quadriplegia cerebral palsy with severe developmental delays;

      h.      Cognitive and motor dysfunction;

      i.      Pain, suffering and mental anguish;

      j.      Diminished enjoyment and quality of life; and

      k.      Other and additional injuries as reflected in the Plaintiff's medical records.

31.     As a further direct and proximate result of the aforesaid negligence of Defendants Avera Health and/or Avera McKennan, Plaintiff I.L.D. has required and will continue to require substantial medical, nursing, and related care, various types of therapies such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical, and other care including specialized devices, equipment, transportation, education and housing, for which significant sums of money have been and will continue to be expended.   Plaintiff I.L.D. has further sustained loss of future wage earning capacity.   The foregoing damages have a value in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiffs I.L.D., a minor child, by Katryna Damgaard, her parent and natural guardian, and Katryna Damgaard, individually, prays for judgment against the Defendants Avera Health and Avera McKennan, in an amount in excess of Seventy-Five Thousand Dollars ($75,000,00), together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09 (2012).

### COUNT II LOSS OF CONSORTIUM

32.     Plaintiff Damgaard incorporates herein by reference thereto the averments contained in Paragraph 26 through 31 and realleges as though fully set forth herein.

33.     As a further direct and proximate result of the negligence of the Defendants, and the resulting damages to her daughter, Plaintiff I.L.D., Plaintiff Katryna L. Damgaard has incurred, and will incur in the future, expenses for the medical, surgical, nursing, therapeutic, rehabilitative and custodial care and attention for her daughter, as well as for specialized equipment, housing, education and other needs to accommodate her  medical conditions, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

34.     As a further direct and proximate result of the negligence of the Defendants, and the resulting damages to her daughter, Plaintiff Katryna L. Damgaard has been deprived, and will be further deprived, of an emotional relationship with her daughter, and a loss of services, companionship and consortium to the present and into the future, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff Katryna L. Damgaard demands entry of judgment against Defendants Avera Health and Avera McKennan for a reasonable amount in excess of Seventy-Five Thousand dollars ($75,000.00), plus her interest, costs, and disbursements as allowed by law.

12

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein.


Respectfully submitted,


Dated:   August _12_, 2013          s/ Stephen Offutt
                                    Stephen Offutt, Esquire
                                    Bar Number # 0387206
                                    Attorney for Plaintiff Katryna Damgaard, *et al.*
                                    JANET, JENNER & SUGGS, LLC
                                    1777 Reisterstown Road, Suite 165
                                    Baltimore, Maryland 21208
                                    Telephone: (410) 653-3200
                                    Fax: (410) 653-9030
                                    soffutt@myadvocates.com

13

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.21, and Fed. R. Civ. P. 11, to the party against whom the allegations in this pleading are asserted.


Dated: August  /2 , 2013                          s/ Stephen Offutt
                                                  Stephen Offutt, Esquire
                                                  Bar Number # 0387206
                                                  Attorney for Plaintiff Katryna Damgaard, et al.
                                                  JANET, JENNER & SUGGS, LLC
                                                  1777 Reisterstown Road, Suite 165
                                                  Baltimore, Maryland 21208
                                                  Telephone: (410) 653-3200
                                                  Fax: (410) 653-9030
                                                  soffutt@myadvocates.com

14