UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KATRYNA DAMGAARD,                        CIVIL NO. 13-2192 (RHK/JSM)
individually and as parent and
natural guardian of I.L.D.,

       Plaintiff,                                     <u>ORDER</u>

v.

AVERA HEALTH and
AVERA MCKENNAN,

       Defendants.

The above matter came before the undersigned on Defendants' Motion to Preclude Untimely Expert Opinions [Docket No. 107] and Plaintiff's Motion for Sanctions [Docket No. 113]. Patrick A. Thronson, Esq. and Robert S. Lewis, Esq. appeared on behalf of plaintiff; Cecilie M. Loidolt, Esq. and Christine E. Hinrichs, Esq. appeared on behalf of defendants.

The Court, being duly advised in the premises, upon all of the files, records, and proceedings herein, and for the reasons described on the record and in the Memorandum below, now makes and enters the following Order:

**IT IS HEREBY ORDERED**:

1. Defendants' Motion to Preclude Untimely Expert Opinions [Docket No. 107] is **GRANTED** in part and **DENIED** in part as follows:

    (a) Defendants' motion to preclude the expert opinion of Dr. Gabrielle deVeber disclosed at her deposition on February 23, 2015, and the supplemental expert opinions of Dr. Joseph Philips, III and

    Dr. Marcus Hermansen, disclosed on March 2, 2015 and March 11, 2015, respectively, is denied.

(b) Defendants shall be permitted to disclose written expert opinions in response to the expert opinion of Dr. Gabrielle deVeber disclosed at her deposition on February 23, 2015, and the supplemental expert opinions of Dr. Joseph Philips, III and Dr. Marcus Hermansen, disclosed on March 2, 2015 and March 11, 2015, respectively.

(c) Plaintiff shall be permitted to depose defendants' experts regarding their responsive opinions to the expert opinion of Dr. Gabrielle deVeber disclosed at her deposition on February 23, 2015, and the supplemental expert opinions of Dr. Joseph Philips, III and Dr. Marcus Hermansen, disclosed on March 2, 2015 and March 11, 2015, respectively.

(d) Sanctions for plaintiff's untimely disclosure of the supplemental expert opinions of Drs. Philips and Hermansen are awarded against plaintiff.  Plaintiff shall pay to defendants the reasonable attorney's fees and costs incurred by defendants in bringing and attending their Motion to Preclude Untimely Expert Opinions.  To calculate the amount of the award, on or before April 30, 2015, defendants' counsel shall serve and file an affidavit setting forth the attorneys' fees and costs incurred in connection with the preparation of their Motion to Preclude Untimely Expert Opinions and attending the

        hearing on this motion, including the hourly rate charged by each attorney or other service provider (<u>e.g.</u> legal assistant), support for the hourly rate (<u>e.g.</u> date of graduation from law school, years of practice as an attorney, or any specialized practice experience or credentialing), an itemization of the time spent by each attorney or other service provider on each service, and a description of the services rendered.  On or before May 15, 2015, plaintiff may serve and file her response to defendants' affidavit.  The Court will then issue an order awarding reasonable attorney's fees and costs to defendants.

(e)    As further sanctions, plaintiff shall reimburse defendants for any additional time and expense charged by defendants' experts to review and respond to the expert opinion of Dr. Gabrielle deVeber disclosed at her deposition on February 23, 2015, and the supplemental expert opinions of Dr. Joseph Philips, III and Dr. Marcus Hermansen, disclosed on March 2, 2015 and March 11, 2015, respectively, and for the expenses incurred by the expert to reappear at any re-noted deposition, including travel and hotel expenses charged by the expert.  Defendants shall submit those additional charges to plaintiff for reimbursement and plaintiff shall pay this amount to defendants within two weeks of submission. If plaintiff objects to the amounts charged by defendants' experts for their review and response to plaintiff's experts' opinions or the

expenses associated with an expert's attendance at any re-noted deposition, plaintiff shall serve their objections on defendants within two weeks of defendants' submission of charges to plaintiff. The parties shall confer to resolve the objections. If the parties cannot resolve plaintiff's objections, then the parties shall file with the Court a letter, not to exceed three pages, single-spaced in 12-point font, explaining their respective positions on the amounts charged by defendants' experts and plaintiff's objections to these amounts.

2. Plaintiff's Motion for Sanctions [Docket No. 113] is **DENIED.**

3. The Court will separately issue a Fourth Amended Pretrial Scheduling Order.

Dated: April 10, 2015         *s/ Janie S. Mayeron*
                              JANIE S. MAYERON
                              United States Magistrate Judge

## MEMORANDUM

### I. BACKGROUND

#### A. Factual Background

The facts as alleged in plaintiff's Amended Complaint were described in detail in this Court's Order dated June 9, 2014, and will not be repeated here. See Order, pp. 1-4 [Docket No. 69]. In brief, plaintiff's minor child, I.L.D., was born on May 20, 2010, with "extensive symmetric cystic encephalomalacia of the cerebral hemispheres related to global ischemia/infarct . . . ." Id., p. 2 (quoting Affidavit of Sarah Hoffman, Ex. 1 [Docket No. 55]). I.L.D. suffers from severe and permanent injuries, including spastic

quadriplegia cerebral palsy with severe developmental delays. Amended Complaint, ¶30 (a-k) [Docket No. 7]. Plaintiff's Amended Complaint alleged medical negligence and loss of consortium based on the care and treatment provided by Dr. Mary Olson, the physician who managed plaintiff's pregnancy and delivered I.L.D . Id., Counts I and II.

This Court's Third Amended Pretrial Scheduling Order required plaintiff to disclose the identity of expert witnesses under Rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B), accompanied by the written report prepared and signed by the experts by September 15, 2014, including the Minn. Stat. §145.682 report required for medical malpractice actions. Defendants' responsive disclosures were due on December 15, 2014, and plaintiff's rebuttal disclosures were due on January 15, 2015 [Docket No. 84].

Plaintiff timely disclosed the initial opinions of Dr. Joseph Philips, III, a neonatologist, Dr. Marcus C. Hermansen, a pediatrician and neonatologist, and the rebuttal opinion of Dr. Gabrielle deVeber, a pediatric neurologist. Affidavit of Sarah Hoffman ("Hoffman Aff."), Exs. A, B, C [Docket No. 111-1]. These experts opined on causation and damages. Id. In response to plaintiff's experts' opinions, defendants disclosed their experts and reports on December 15, 2014. Affidavit of Robert S. Lewis ("Lewis Aff."), Ex. B [Docket No. 120-1]. In her rebuttal disclosure, Dr. deVeber opined that I.L.D.'s injuries resulted from hypoxic-ischemic encephalopathy caused by partial prolonged and acute intrapartum asphyxia close to the time of birth, possibly contributed to by postnatal seizures. Hoffman Aff., ¶5. None of the three experts opined on the standard of care provided by Dr. Olson before or after delivery of I.L.D.

During defendants' deposition of Dr. deVeber on February 23, 2015, counsel asked Dr. deVeber and Dr. deVeber responded as follows:

> Q. Was there any---did the timing of giving phenobarbital have any bearing on the child's ultimate outcome in this case, in your opinion?
>
> A. Yes, I think it did. If it was delayed, ongoing seizures are not good for the brain, in particular when there is a problem with energy supply because the seizures create a tremendously increased demand for energy supply.
>
> Q. What do you mean by "energy supply?"
>
> A. I mean glucose and oxygen.
>
> Q. How much of a role did any delay in phenobarbital being given play in the child's outcome in this case?
>
> A. I couldn't estimate a percentage but it would have been – I would say a significant role.
>
> Q. How significant?
>
> A. I think that the severity of the HIE, which was profound, was the major determination of the outcome, but the seizures occurring at a time when the brain was struggling to get enough energy would have worsened the ultimate severity but I can't, again, say percentage-wise.

Hoffman Aff., Ex. D, p. 34 (excerpt of transcript of Dr. deVeber's deposition).

In addition, in response to defendants' questioning about the cause of the severe hypoxic ischemic injury, Dr. deVeber testified:

> Q. When you were contacted, what specific issues were you asked to provide opinions on, Dr. deVeber?
>
> A. I was asked to provide opinions on the nature and timing of the brain injury, in particular focusing on whether stroke might have been part of the injury.
>
> Q. And I take it – based on what I've read, it is your opinion that stroke was not part of the injury?

6

A.     The imaging picture is overwhelmingly specific for diffuse severe hypoxic ischemic injury.

Q.     And do you have an opinion on the cause of the severe hypoxic ischemic injury?

A.     I believe there was a lack of oxygen delivery and glucose delivery to the baby's brain in the hours before birth, probably increased by the difficulty with respiration and the ongoing seizures in the hours after birth.

Q.     Okay. I take it you were not asked to provide opinions on the standard of care for an obstetrician or family-practice doctor practicing obstetrics?

A.     That's correct.

Q.     And you were not asked to provide opinions on the standard of care as it applied to Dr. Mary Olson?

A.     That's correct.

Q.     With respect to her care regarding Katryna Damgaard or her care of the baby [I.L.D.]?

A.     Was Dr. Olson caring for [I.L.D.]? I wasn't – I thought she was the obstetrician.

Q.     She is the family practice doctor doing obstetrics.

A.     I see.

Q.     So, with that in mind, were you asked to provide opinions on her care of Katryna Damgaard, the mother, or [I.L.D.] the baby?

A.     I think the opinion I was asked to provide or did provide was based on the seizure control, the adequacy of seizure control.

Q.     Okay.

A.     And so that might relate then to Dr. Olson's care of the baby.

Q.     Okay. Are you critical of the care of the seizure control of the child at the Windom Area Hospital?

> A. I'm concerned about it.
>
> Q. Are you critical?
>
> A. By "critical" do you mean. . .?
>
> Q. Do you believe there was a violation of the standard of care with respect to the baby in the postnatal period at Windom Area Hospital by anyone?
>
> A. Yes, I think if seizures were documented as often and – as often as they were based on the notes, that phenobarbital treatment as recommended by their consult, their telephone consult should have been provided and then escalated as needed to stop the seizures.

Id., pp. 68:21-70:10.

Dr. deVeber then opined on when she believed the phenobarbital treatment should have been instituted. Id., pp. 71-78.

Dr. deVeber's opinions relating to the role the delay in administration of phenobarbital may have played in I.L.D.'s injuries or the quality of care provided by Dr. Olson were not reflected in her report. See Lewis Aff., Ex. D.

On March 5, 2015, plaintiff served a Supplemental Affidavit of Dr. Philips, which addressed the failure of Dr. Mary Olson to appropriately diagnose and treat I.L.D.'s neonatal seizures and Dr. Olson's failure to timely request and obtain a transfer of the baby to a tertiary care facility for treatment by a neonatologist. Hoffman Aff., Ex. E (Supplemental Affidavit of Expert Identification (Joseph B. Philips, III, M.D.)). Dr. Philips opined that Dr. Olson breached the standard of care in "not vigilantly monitoring – or instructing others to vigilantly monitor – the child for seizure activity, and failing to administer phenobarbital earlier in the child's clinical course." Id., ¶11. Dr. Philips' opinions were disclosed to defendants about a month before his scheduled deposition.

On March 11, 2015, and three days before his deposition, plaintiff disclosed the Supplemental Affidavit of Expert Identification of Dr. Hermansen. Hoffman Aff., Ex. F. Dr. Hermansen opined that Dr. Olson breached the standard of care in failing to monitor I.L.D. for seizure activity, failing to administer anti-convulsant medication, failing to transfer the child to a tertiary care facility until nearly seven hours after her birth and in failing to cooling therapy, which would have been beneficial to a baby suffering from hypoxic-ischemic encephalopathy. Id., ¶¶5-11.

At the hearing, plaintiff's counsel admitted that a strategic decision was made by counsel to retain Drs. Philips, Hermansen and deVeber to opine on causation and damages, and not standard of care. Other physicians had been retained by plaintiff to address the standard of care provided by Dr. Olson prior to and during delivery of I.L.D.

### B.     Defendants' Motion to Preclude Untimely Expert Opinions

Pursuant to Rules 16 and 37 of the Federal Rules of Civil Procedure, defendants moved to exclude Dr. Philips' and Dr. Hermansen's supplemental reports and Dr. deVeber's opinions expressed during her deposition regarding standard of care provided by Dr. Olson. The basis for this motion was that these opinions, although styled as "supplements," were entirely new and untimely expert opinions on the standard of care. Defendants' Memorandum of Law in Support of Motion to Preclude Untimely Expert Opinions ("Defs.' Mem."), pp. 4-7 [Docket No. 109]. Defendants contended that these opinions should have been disclosed no later than September 15, 2014. Id., p. 5. According to defendants, there was no excuse for failing to timely disclose these opinions because they were based wholly on I.L.D.'s neonatal condition, which was reflected in the medical records in plaintiff's possession from the outset of

9

the case. Id. Further, it was clear from their initial reports that Dr. Hermansen and Dr. Philips had reviewed the relevant medical records that bore on their opinions regarding standard of care. Id. Nevertheless, despite having possession of these records, the experts never opined on alleged deficiencies in Dr. Olson's postnatal care of I.L.D. Id., p. 6.

Defendants also objected to the introduction of an entirely new theory of negligence into the case. None of plaintiff's standard of care experts had opined that Dr. Olson was negligent in her care of I.L.D. after her birth. The Amended Complaint did not reference post-birth care, and all of the standard of care experts had focused on the management of plaintiff's labor and delivery. Id.

Defendants argued, without elaborating, that they would be prejudiced by plaintiff's untimely disclosures and sought to have the reports excluded pursuant to Fed. R. Civ. P. 16 and 37. Id., p. 7. At the motion hearing, defendants' counsel explained that defendants would be prejudiced because the late disclosures would likely necessitate the issuance of new opinions by their experts and depositions of one or more experts who had already testified.

In response, plaintiff asserted that she was entitled to supplement her expert disclosures pursuant to Fed. R. Civ. P. 26(e). Plaintiff's Memorandum of Law in Opposition to Motion to Preclude Expert Opinions ("Pl. Mem."), pp. 6-7 [Docket No. 119]. Plaintiff argued that supplemental reports were permitted under Rule 26(e) and, therefore, not subject to exclusion under Rule 37. Id., p. 7. Furthermore, even if the opinions were untimely, exclusion was too harsh a punishment. Id., p. 8. Plaintiff had not engaged in any bad faith conduct in connection with the disclosures and had

not engaged in the sort of "sneak attack" disfavored by the Eighth Circuit. Id., p. 9 (citing Berfeld v. Unimin Corp., 319 F.3d 350, 354-55 (8th Cir. 2003)).

Plaintiff submitted that the four-factor analysis described by Mathers v. Northshore Mining Co., 217 F.R.D. 474, 482 (D. Minn. 2003) to determine if a disclosure was substantially justified or harmless dictated allowing the disclosures to stand. Id., p. 10. "Under this test, a court must evaluate (1) the importance of the excluded material; (2) the explanation of the party for the failure to comply with the disclosure rules; (3) the potential for prejudice from allowing the material to be used at trial; and (4) the availability of a continuance to cure such prejudice." Mathers, 217 F.R.D. at 482 (citing Neupak Inc. v. Ideal Mfg. Sales Corp., 168 F.Supp. 2d 1012, 1016 (D. Minn. 2001)).

Plaintiff argued that as to the first prong, the disclosures were "key" to her case in that they described another explanation for I.L.D.'s injuries and indicated how defendants had breached the standard of care. Id., p. 11. As to the second prong, plaintiff submitted that even assuming that she did not comply with the deadlines in the Third Amended Pretrial Scheduling Order, her late submission resulted from "legitimate developments in discovery" -- i.e. defendants' counsel's decision to elicit Dr. deVeber's deposition testimony on Dr. Olson's breach of the standard of care. Id. At the hearing plaintiff's counsel explained that it was Dr. Olson's testimony regarding standard of care, which prompted plaintiff to ask both Drs. Philips and Hermansen to examine I.L.D.'s medical records for the purpose of opining on the standard of care provided by Dr. Olson to I.L.D. after her delivery. Plaintiff's counsel acknowledged that these records had been in the possession of Drs. Philips and Hermansen at the time they had

11

issued their initial opinions and that counsel had not asked either physician to opine on the standard of care provided by Dr. Olson to I.L.D. post-delivery. In short, Dr. deVeber's opinions on the standard of care provided by Dr. Olson were not known to plaintiff until Dr. deVeber's deposition, but once defendants' counsel asked Dr. deVeber about the standard of care, plaintiff's counsel believed that the neonatology experts had to re-examination the records to determine if they agreed with Dr. deVeber's opinion.

Regarding the third prong, plaintiff claimed that defendants would not be prejudiced by allowing the disclosures to stand, noting that defendants had failed to describe any actual prejudice they would suffer. Id. According to plaintiff, defendants could depose the experts regarding their supplemental opinions. Id., p. 12. Finally, a continuance could ameliorate any potential prejudice. Id.

This Court ruled on defendants' motion at the hearing, granting the motion in part and denying it in part for the following reasons. First, this Court rejected plaintiff's contention that the new disclosures were supplemental and, therefore, permitted under Rule 26(e). Drs. Philips, Hermansen and deVeber were retained to opine on causation and damages and their "supplemental" opinions related to an entirely new topic – standard of care. Consequently, the new disclosures are subject to mandates of Rule 37, which provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate

12

> sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).

In determining whether the automatic exclusions of Rule 37 apply, the Court considered the following four factors in "assessing substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice." Bennett v. International Paper Co., Civ. No. 05-38 (PJS/RLE), 2008 WL 5130873, at *2-3 (D. Minn. Aug. 29, 2008) (citing Transclean Corp.v. Bridgewood Services, Inc., [77 F.Supp.2d 1045,] 1064 [(D.Minn.1999) (citing Citizens Bank v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir.1994); Millen v. Mayo Foundation, 170 F.R.D. 462, 465 (D.Minn. 1996); see also, Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 744 (Fed.Cir. 1997)); Transclean Corp. v. Bridgewood Servs., Inc., 101 F.Supp.2d 788, 795-96 (D.Minn. 2000); see also, C.H. Robinson Co. v. Zurich American Insurance Co., 2004 WL 1765320 at *2 (D.Minn., August 5, 2004), citing Neupak Inc. v. Ideal Mfg. Sales Corp., 168 F.Supp.2d 1012, 1016 (D.Minn. 2001)); see also Mathers, 217 F.R.D. at 482.

Under the first prong of the four-factor test, the Court found that the newly disclosed opinions were very important to plaintiff's case regarding the standard of care provided by Dr. Olson to I.L.D., including after delivery.

As to plaintiff's explanation for failing to comply with the disclosure deadlines, the Court found that Dr. deVeber's testimony raised a new theory which plaintiff had not previously considered, and which provided the impetus for plaintiff to return to Drs. Philips and Hermansen to seek their opinions on Dr. Olson's standard of care post-delivery. While this explanation may have justified the late discovery and disclosures of these new opinions, plaintiff offered no justification for the manner in which they were made.[1] Plaintiff should have sought leave of the Court to serve the untimely reports or moved to modify the scheduling order pursuant to Rule 16(b)(4). Instead, plaintiff took matters into her own hands and disclosed the new opinions under the guise of supplementation. The Court does not condone that approach. "Obedience to the constraints of the Court's Scheduling Orders is critical if the Court is to capably perform its case management responsibilities." Tomlin v. Holecek, 158 F.R.D. 132, 135 (D. Minn. 1994). "Accordingly, the flouting of discovery deadlines causes substantial harm to the judicial system." Id. (internal quotation and citation omitted). "Nevertheless,

---

[1] At the motion hearing defendants' counsel cited In re Baycol Prods. Litig., 596 F.3d 884 (8th Cir. 2010), in support of defendants' position that there was no justification for the late disclosure of Drs. Philips' and Hermansen's standard of care opinions as plaintiff's experts had in their possession all of the records on which their new opinions were based from the outset of the case. In Baycol, the Eighth Circuit found that the district court did not abuse its discretion in striking a supplemental report that was a year late. Id. at 888. The only reason provided for the delay was that the expert "reviewed the records . . . in greater detail." Id. The court struck the report because of the extreme prejudice that would result if it was allowed to stand where the expert had already been deposed and defendant had moved for summary judgment based on the expert's deposition and initial report. Id. Here, while one or two of the experts that defendants may ask to respond to Drs. Philips' and Hermansen's standard of care opinions have already been deposed, and a partial summary judgment motion has been filed by Avera, the summary judgment motion does not rely on the deposed experts' opinions and the Court has put in place provisions to address the additional time and expense that these experts may incur if they are called upon to render new opinions and be deposed again.

blind adherence to a scheduling order's deadlines, without proper regard for the bases and effects of the non-compliance, may well be inconsistent with the dominant interest of ascertaining the truth." Id. (citing Dabney v. Montgomery Ward & Co., 692 F.2d 49, 52 (8th Cir.1982)).

As a result, the Court concluded that in the interests of a full and fair trial on the merits, the disclosures should be permitted to stand and that any prejudice to defendants by the untimely disclosures of these new opinions could be ameliorated by allowing defendants' experts to submit supplemental opinions.

At the same time, the Court determined that sanctions under Fed. R. Civ. P. 16(f)(1)(C)[2] for plaintiff's failure to obey this Court's scheduling order were in order. As a sanction for plaintiff's conduct, plaintiff shall pay all fees and costs incurred by defendants in bringing and attending the instant motion. Additionally, defendants' experts will have an opportunity to submit new opinions to respond to the standard of care opinion elicited from Dr. deVeber, and the untimely disclosures by Drs. Philips and Hermansen, and plaintiff shall be required to reimburse defendants for the fees and expenses charged by these experts for these additional opinions. Further, if plaintiff

---

[2] Rule 16(f)(1)(C) states:

(1) On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:

\*\*\*

(C) fails to obey a scheduling or other pretrial order.

(2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

wants to re-depose any defendant expert who discloses new opinions in response to these opinions of Drs. deVeber, Philips, and Hermansen, and that expert has already been deposed by plaintiff, then plaintiff will be required to bear the expenses incurred by the expert to reappear at any re-noted deposition, including travel and hotel expenses charged by the expert.

The Court found that there is no need for a continuance of the trial ready date. The additional depositions and supplementation of expert opinions this Court is allowing can be completed by the August 1, 2015 trial date. However, the Court will amend the scheduling order to permit the disclosure of defendants' expert opinions and the depositions of defendants' experts on these opinions, and the nondispositive motion deadline bearing on expert discovery.[3]

This Court required the parties to submit a proposal regarding a date by which defendants would supplement their experts' opinions, a new expert deposition cut-off date and an amended non-dispositive motion deadline. The parties have complied with that directive and the Court will separately issue a Fourth Amended Pretrial Scheduling Order contemporaneously with this Order.

---

[3] At the motions hearing, the Court learned that by informal agreement, the parties were continuing to take expert depositions beyond the cut-off date of April 1, 2015. The Court cautioned the parties that to the extent they agree informally to the extension of deadlines in the scheduling order, they must seek relief from the governing pretrial scheduling order, or proceed at their own peril.

### C.     **Plaintiff's Motion for Sanctions and To Exclude Expert Testimony of Dr. Kirk A. Shibley**

Plaintiff moved to exclude the testimony of defendants' expert on standard of care, causation and damages, Dr. Kirk A. Shibley, as a sanction for defense counsel Cecilie M. Loidolt's allegedly obstructive behavior and coaching of the witness during his deposition and the depositions of other witnesses. Plaintiff's Memorandum of Law in Support of Motion for Sanctions, pp. 3-15 [Docket No. 116]. Plaintiff submitted an excerpt of the transcript of Dr. Shipley that she argued showed Loidolt coaching Dr. Shibley and otherwise obstructing the deposition with argumentative and suggestive objections in violation of Fed. R. Civ. P. 30(c)(2). Plaintiff's counsel eventually terminated the deposition. Id., p. 6 (citing Affidavit of Robert Lewis, Ex. F) (transcript of deposition of Kirk Shibley, M.D.) [Docket No. 114-1]. In support of her view that Loidolt was obstructing the deposition, plaintiff pointed to the fact that Loidolt's name appeared 149 times in Dr. Shibley's deposition transcript, which is 152 pages long. Id., p. 9. Plaintiff also cited excerpts from the transcripts of defendants' witnesses David Flicek and Renae Buehner, which plaintiff claimed further illustrated Loidolt's obstructive behavior. Id., p. 8 (citing Lewis Aff., Exs. G, H) (deposition transcripts of Flicek and Buehner).

Plaintiff argued that exclusion of Dr. Shibley's testimony was an appropriate sanction for Loidolt's conduct and noted that defendants have three other experts regarding standard of care, causation and damages. Id., p. 14.

Defendants responded that Dr. Shibley had answered the question that plaintiff contended Loidolt was interfering with and that plaintiff's counsel unnecessarily terminated the deposition. Defendants' Memorandum of Law in Opposition to Motion

for Sanctions, p. 1 [Docket No. 118] (citing Lewis Aff., Ex. G, p. 143:25-145:7). According to defendants, counsel's conduct was not sanctionable as she only objected to the question when plaintiff's counsel "continued to harass" Dr. Shibley after he had answered the question. Id., p. 6. Further, defendants objected to the extreme sanction of excluding an expert witness. Id., pp. 9-12. Defendants submitted that pursuant to Rule 30, the court may impose an "appropriate sanction" for violating Rule 30. Id., p. 9. Here, plaintiff failed to justify the extraordinary relief she was seeking and noted that plaintiff failed to move to compel Dr. Shibley's testimony or to reconvene the deposition. Id., p. 10.

Defendants also rejected plaintiff's argument that in light of the fact that defendants have four standard of care experts, defendants will not be unduly harmed if Dr. Shibley's testimony is excluded. Id., pp. 10-11. Defendants noted that Dr. Shibley is the only obstetrician among their experts and the only expert who performed a blind review of the fetal heart tracing strip, thus making his testimony and opinions distinct from defendants' other experts. Id., p. 10. Further, to the extent that plaintiff argued that Dr. Shibley's testimony was tainted by Loidolt's coaching, defendants submitted that there was no support for that contention and that Dr. Shibley had formed his opinions long before the deposition was taken. Id., p. 11 (citing Lewis Aff. Ex. A) (Dr. Shibley's supplemental answer to interrogatories dated 12/12/14 describing Dr. Shibley's opinions and signed by Dr. Shibley). Id., p. 11. As for the numerous references to Loidolt's name in the transcript, defendants explained that the deposition had been taken telephonically, which necessitated Loidolt's interjections to direct the

witness to the correct exhibits, and to explain on the record what Dr. Shibley was reviewing. Id., p. 8.

Lastly, defendants objected to plaintiff's failure to engage in a meet-and-confer as required by Local Rule 7.1(a). Id., pp. 12-13. Plaintiff's counsel certified that he met and conferred in good faith with defendants' counsel "in an effort to resolve this issue" during Dr. Shibley's deposition. [Docket No. 116] (Plaintiff's Meet and Confer Statement). According to defendants, there was no meet-and-confer; there was only plaintiff's counsel's threats at the deposition to strike Dr. Shibley as a witness, and in any event, termination of the deposition cannot be considered a good-faith attempt to meet-and-confer. Id. p. 12.

This Court denied plaintiff's motion for the following reasons. Plaintiff failed to engage in a meet-and-confer as required by Local Rule 7.1(a). That Rule requires the following: "Before filing a motion other than a motion for a temporary restraining order or a motion under Fed .R. Civ. P. 56, the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion. The moving and opposing parties need not meet in person." L.R. 7.1(a) (emphasis added). The Court has read the entire deposition transcript and concluded that no meet-and-confer took place. Plaintiff's counsel terminated the deposition and stated that he was going to court to get a ruling to strike Shibley and "or come back with costs and sanctions to . . .reconvene the deposition to finish the deposition." Lewis Aff., Ex. F, p. 147:1-9. Threatening to bring a motion is not the sort of "good faith effort to resolve the issues" of a potential motion that is contemplated by the Rule. In the future, this Court will expect the parties to engage in the robust meet-and-confer contemplated

by Local Rule 7.1, by either meeting in person or discussing their differences on the telephone.

As to the merits of the motion, the Court concluded that there was no basis for striking Dr. Shibley's opinions pursuant to Rule 30(c)(2). That Rule requires that an objection must be "stated concisely in a nonargumentative and nonsuggestive manner." The Court found that only on a couple of occasions did Loidolt walk the thin line between stating objections and coaching Dr. Shibley, but with the exception of those instances, she did not violate Rule 30. For all of these reasons, plaintiff's motion was denied.

J.S.M.