# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Katryna L. Damgaard, individually and
as parent and natural guardian of I.L.D.,

                                Plaintiffs,[1]        Civ. No. 13-2192 (RHK/JSM)
                                                            **ORDER**

v.

Avera Health, *et al.*,

                                Defendants.

      This matter is before the Court on Plaintiff's Motion to Exclude Testimony from Defendants' Experts (Doc. No. 95). For the reasons that follow, the Motion will be denied.

      This is a medical-malpractice case concerning the delivery of Plaintiff's daughter, I.L.D., in 2010. Plaintiff alleges that her treating physician, Dr. Mary Olson, provided negligent care to her during labor and delivery and to I.L.D. during her first hours of life, leading I.L.D. to suffer hypoxic-ischemic encephalopathy (HIE) – brain damage caused by inadequate oxygenation to brain tissue. I.L.D., now nearly five years old, suffers from spastic quadriplegic cerebral palsy, HIE, seizures, and developmental delay and is unable to feed herself, walk, or communicate normally, all of which Plaintiff attributes to Dr. Olson's alleged negligence.

---

[1] Although the caption uses the plural term "Plaintiffs," there is only one Plaintiff in this case: Katryna Damgaard, who has sued on her own behalf and on behalf of her daughter. Hence, the Court refers to her in the singular.

As is unsurprising given the nature of this case and I.L.D.'s ailments, the parties have retained numerous experts to render opinions at trial regarding the causes of I.L.D.'s medical problems. Plaintiff's experts assign the blame to Dr. Olson, while Defendants' experts offer a number of alternative hypotheses including Plaintiff's drug use, smoking, genetic predisposition, and other possibilities. Plaintiff now moves to exclude the opinions offered by Defendants' experts under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The Court has carefully considered the materials supporting and opposing the Motion and concludes that it should be denied.

> Rule 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court, acting as a "gatekeeper," must evaluate whether proffered expert testimony passes muster under Rule 702, bearing in mind the touchstone for admitting such testimony is assistance to the trier of fact. See, e.g., Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005). The threshold is low – expert testimony should be admitted if it "advances the trier of fact's understanding *to any degree*." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (emphasis added) (internal quotation marks and citations omitted); accord, e.g., Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014) ("[C]ases are legion that . . . call for the liberal admission of expert

testimony."). In other words, only if the proffered testimony is "so fundamentally unsupported that it can offer no assistance to the jury" should it be excluded. United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011) (citations omitted).

As the Eighth Circuit has recognized, Rule 702 "reflects an attempt to *liberalize . . . the admission*" of expert testimony and "*clearly is one of admissibility rather than exclusion*." Polski v. Quigley Corp., 538 F.3d 836, 838-39 (8th Cir. 2008) (emphases added). As a result, courts must resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility, Finch, 630 F.3d at 1062, and "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility," Robinson, 447 F.3d at 1100. Hence, "the rejection of expert testimony is the exception rather than the rule." Id.

Bearing the above principles in mind, the Court concludes that Plaintiff's arguments miss the mark. Indeed, Plaintiff herself recognizes that it is appropriate for a defense expert to offer possible alternative theories for an injury's cause. (Pl. Mem. at 13 (citing Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 573-74 (8th Cir. 2008).) And that is what Defendants' experts have done here, offering several possible alternative causes for I.L.D.'s ailments other than Dr. Olson's (alleged) negligence.

Nevertheless, Plaintiff argues the opinions should be excluded because they are speculative, unsupported by the facts in the record, or contrary to the facts of the case, and hence not sufficiently "reliable" under Daubert. For example, she argues there is no evidence in the record indicating she was taking Depakote, an anti-depressive medication linked to some birth defects, after she became pregnant with I.L.D., and hence any

-3-

opinion concerning the potential effects of Depakote must be excluded.  (Id. at 20.) Contrary to her assertions, however, there *is* evidence in the record suggesting prenatal Depakote use, including the testimony of I.L.D.'s father and reference to the drug in one of Dr. Olson's medical records.  Plaintiff responds by belittling this evidence, labeling I.L.D.'s father "estranged" from Plaintiff and the medical-record reference as a mere "stray" remark.  (Id. at 5-6.)  But this simply drives home why the defense-expert opinions should be admitted.

> While the Court undoubtedly fulfills a "gatekeeper" role under Rule 702 and Daubert, it must be careful when performing that role not to invade the province of the jury, either by assessing witness credibility or determining the weight (if any) expert testimony should be accorded.  See, e.g., United States v. Vesey, 338 F.3d 913, 917 (8th Cir. 2003).  It is for this reason the Eighth Circuit has repeatedly counseled that the factual basis for an expert opinion "goes to the *credibility* of the testimony, not the *admissibility*."  Synergetics, Inc. v. Hurst, 477 F.3d 949, 955-56 (8th Cir. 2007) (emphases added); accord, e.g., In re Zurn Pex Plumbing Prods. Liab. Litig., 644 F.3d 604, 614 (8th Cir. 2011); Larson, 414 F.3d at 941; Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 401 F.3d 901, 916 (8th Cir. 2005).  Though Plaintiff clearly disagrees with the opinions offered by Defendants' experts, her arguments focus largely on the factual basis for those opinions.  The "remedy," so to speak, is not exclusion; rather, it is incumbent upon Plaintiff to "examine the factual basis for the opinion[s] in cross-examination."  Synergetics, 477 F.3d at 955.

Plaintiff contends that the defense-expert opinions are, in many instances, "comprehensively refuted by [her] highly qualified rebuttal experts." (Pl. Mem. at 38.) Yet again, however, Plaintiff asks the Court to usurp the jury's role by essentially determining that her experts are better qualified than Defendants'. The Court's gatekeeper role is more circumscribed; it does not weigh the strengths and weaknesses of competing expert evidence in deciding the more limited question of *admissibility*. Johnson, 754 F.3d at 562 ("District courts are admonished not to weigh or assess the correctness of competing expert opinions."). Simply put, trial courts "are not empowered to determine which of several competing scientific theories has the best provenance." Kuhn v. Wyeth, Inc., 686 F.3d 618, 625 (8th Cir. 2012) (internal quotation marks and citations omitted).

Plaintiff also suggests the opinions cannot pass muster because Defendants' experts point to few (or, in some instances, no) studies supporting their opinions. (See, e.g., Pl. Mem. at 16.) While published studies tending to support an expert's opinion often are a hallmark of admissible testimony, Defendants correctly note "there is no *requirement* that a medical expert must always cite published studies on general causation in order to reliably conclude that a particular object caused a particular illness." Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001) (emphasis added). As long as an expert's methodologies and opinion are sufficiently reliable, they need not be supported by published studies; this, too, is simply fodder for cross-examination.

At bottom, Plaintiff will have ample opportunity at trial to explore the challenged opinions, including the factual bases upon which they rest, through "[v]igorous cross-

examination" and the "presentation of contrary evidence." Daubert, 509 U.S. at 596. The adversary process is the best way to ferret out unsupportable expert conjecture, rather than having the opinions "excluded by the court at the outset." Johnson, 754 F.3d at 562.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion to Exclude Testimony from Defendants' Experts (Doc. No. 95) is **DENIED**. In light of the foregoing, the parties shall limit their arguments at the May 20, 2015 hearing to the lone remaining Motion, namely, Defendants' Motion for Partial Summary Judgment (Doc. No. 89).

Dated: May 12, 2015                                    s/Richard H. Kyle
                                                       RICHARD H. KYLE
                                                       United States District Judge