# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Katryna L. Damgaard as parent and natural guardian of I.L.D., | Case No. 13-cv-2192 (SRN/JSM) |
| Plaintiff, and, | |
| State of Minnesota, Department of Human Services, | |
| Plaintiff Intervenor, and, | |
| BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota, | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff Intervenor, | |
| v. | |
| Avera McKennan, | |
| Defendant. | |

Gerald D. Jowers, Jr., Kenneth M. Suggs, Patrick Andrew Thronson, and Robert S. Lewis, Janet, Jenner & Suggs, LLC, 1777 Reisterstown Rd., Ste. 165, Baltimore, MD 21208, and Wilbur W. Fluegel, Fluegel Law Office, 150 South 5th St., Ste. 2525, Minneapolis, MN 55402, for Plaintiff.

W. Paul Otten, Otten Law Offices, 12400 Portland Ave. S., Ste. 135, Burnsville, MN 55337, for Plaintiff Intervenor State of Minnesota, Department of Human Services.

Vincent J. Moccio, Bennerotte & Associates, PA, 3085 Justice Way, Ste. 200, Eagan, MN 55121, for Plaintiff Intervenor BCBSM, Inc.

Cecilie M. Loidolt, Jessica L. Klander, Kelly A. Putney, Sarah M. Hoffman, Christine E. Hinrichs, Mark R. Bradford, Bassford Remele, PA, 33 South 6th St., Ste. 3800, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Avera McKennan's Motions *in Limine* ("Def.'s Mots. *in Limine*") [Doc. No. 244].  Specifically, the Court considers Defendant's Motion *in Limine* Regarding Medical Expenses Incurred During Minority ("Minority Med. Expenses Motion"), (see Def.'s Mots. *in Limine* at ¶ 1; Def.'s Motion *in Limine* Regarding Medical Expenses Incurred During Minority ("Def.'s Mem. on Minority Med. Expenses") [Doc. No. 246]), and Defendant's Motion *in Limine* to Exclude Evidence of Preeclampsia, Gestational Hypertension, or Blood Pressure Abnormalities ("Medical Conditions Motion"), (see Def.'s Mots. *in Limine* at ¶ 4; Defendant's Motion *in Limine* to Exclude Evidence of Preeclampsia, Gestational Hypertension, or Blood Pressure Abnormalities ("Def.'s Mem. on Medical Conditions") [Doc. No. 252]).  For the reasons that follow, the Minority Med. Expenses Motion is denied and the Medical Conditions Motion is granted in part and denied in part. [1]

---

[1] At the Pretrial Conference held on December 8, 2015, the Court ruled on Plaintiff's Motion in Limine [Doc. No. 261] as well as ¶¶ 2, 3, and 5 of Defendant's Motions *in Limine*.  (See Court Minutes dated 12/08/2015 [Doc. No. 332].)  Plaintiff Intervenors BCBSM and State of Minnesota, Department of Human Services have since filed Motions to Intervene in this matter.  (See Doc. Nos. 335 and 341.)  These Motions to Intervene and their associated briefing are directly related to Defendant's Minority Med. Expenses Motion and thus are referenced in this Order.  However, the Court will rule on the Motions to Intervene themselves at a later time, if necessary.

## I.   BACKGROUND[2]

### A. Factual Background

Plaintiff Katryna L. Damgaard ("Ms. Damgaard" or "Plaintiff") brought claims of medical negligence and loss of consortium against Defendant on behalf of her minor child ("I.L.D."). (See generally Am. Compl. [Doc. No. 220].) These claims relate to alleged negligence by Defendant, a healthcare provider, during the labor and birth of I.L.D. on May 20, 2010. (See Am. Compl. at ¶ 29.) According to Plaintiff, this negligence resulted in I.L.D. suffering severe disabilities and other health conditions which have and will continue to require extensive specialized care throughout I.L.D.'s life. (See id. at ¶ 30.) Relevant to the present matter, as part of her damages claim, I.L.D requests past and future medical expenses. (See id. at ¶¶ 31, 33.)

I.L.D. is, and has been since her birth, a recipient of medical assistance benefits (commonly known as Medicaid) provided by both the State of Minnesota through its Department of Human Services (MDHS) and Blue Cross and Blue Shield of Minnesota (BCBSM). (See Aff. of Patrick Thornson, dated 8/26/2015 ("Thornson Aff."), Exs. 1, 2 [Doc. No. 275].) BCBSM contracts with MDHS to provide Medicaid benefits and thus is considered a state agency under the relevant statutes. See Minn. Stat. §§ 256.015, 256B.042, 256B.056; (Moccio Aff. dated 1/5/2016 ("Moccio Aff."), Ex. A [Doc. No. 350]). To provide these medical benefits, BCBSM issued a Prepaid Medical Assistance Program Policy directly to I.L.D., not Ms. Damgaard. (Moccio Aff., Ex. A.)

---

[2] This case has been litigated for over two years. Its factual and procedural history is well-documented in numerous prior opinions and orders. Only the facts and procedure relevant to the instant motions are addressed here.

As a statutory condition of receiving these benefits, I.L.D. and Ms. Damgaard assigned any claim against Defendant for I.L.D.'s past and future medical expenses to MDHS and BCBSM to the extent of the benefits each paid.  See Minn. Stat. § 256B.056, subd. 6; Guzman ex rel. Losoya v. U S W., Inc., 667 N.W.2d 489, 492–93 (Minn. Ct. App. 2003).  MDHS and BCBSM also carry rights to subrogation for the benefits they provide.  See Minn. Stat. § 256B.37.  Pursuant to this assignment and Minn. Stat. § 256B.042, MDHS has a statutory lien for $186,877.54, representing some of the medical benefits it has provided to I.L.D., on any settlement or award related to Plaintiff's claims against Defendant.  (Thornson Aff., Ex. 1 at 1.)[3]  BCBSM has a similar lien for $196,582.63, representing services it has rendered to I.L.D.  (Id., Ex. 2 at 3–9.)  However, neither MDHS nor BCBSM are presently parties to this suit.  But see infra, n.1.

### B.  Procedural Background

Initially, Ms. Damgaard asserted an individual claim of medical negligence against Defendant in addition to her claims on behalf of I.L.D.  (See Am. Compl. at 13.)[4]  This individual claim requested, in part, damages consisting of I.L.D.'s past and future medical expenses.  (Id. at ¶ 31.)  However, Ms. Damgaard later voluntarily dismissed her individual claim.  (See Order dated 7/20/2015 [Doc. No. 233].)

The Court also previously granted partial summary judgment in Defendant's favor.  (Order dated 6/3/2015 [Doc. No. 210].)  In relevant part, Plaintiff was precluded

---

[3] Citations to these exhibits reference the page numbers within each exhibit, not the ECF page number.

[4] The ECF page number is referenced as this part of the Am. Compl. does not carry a paragraph designation.

from claiming that Defendant's conduct on May 17, 2010, three days prior to I.L.D.'s birth when Defendant attempted to induce labor in Ms. Damgaard, was negligent because Plaintiff failed to present evidence suggesting that Defendant's conduct on that day was the proximate cause of I.L.D.'s injuries.  (Id. at 20–22.)

Defendant subsequently filed several motions *in limine*, two of which are the subject of this Order.  First, Defendant asks that any evidence of preeclampsia, gestational hypertension, or any blood pressure issue ("the Medical Conditions") be excluded at trial.  (Def.'s Mem. on the Medical Conditions at 1; see Def.'s Mots. *in Limine* at ¶ 4.)  Defendant argues that because the Court precluded Plaintiff from claiming any conduct that occurred on May 17, 2010 was negligent, and because the Medical Conditions—to the extent they existed at all—were identified on that date, evidence of the Medical Conditions should be excluded at trial.  (Def.'s Mem. on the Medical Conditions at 1–3.)  Defendant further contends that Plaintiff has offered no evidence that the Medical Conditions caused or contributed to I.L.D.'s injuries, making evidence of the Medical Conditions irrelevant, prejudicial, and confusing.  (Id. at 3–6.)

Plaintiff opposes this motion.  (See Pl.'s Mem. in Opp. to Def.'s Mot. *in Limine* to Exclude Evidence of the Medical Conditions ("Pl.'s Opp. on the Medical Conditions") [Doc. No. 280].)  Plaintiff claims that evidence of the Medical Conditions "should be admitted as 1) relevant to Defendant's contention that Ms. Damgaard did not have these medical conditions and was not a high-risk patient; 2) relevant to liability and causation; and 3) relevant to provide appropriate background information."  (Pl.'s Opp. on the Medical Conditions at 1.)  Plaintiff argues the Medical Conditions are relevant to liability because if

Ms. Damgaard had the Medical Conditions and Defendant knew this fact, that would make her a high-risk patient and require a different standard of care.  (See id. at 4–6.)  Plaintiff notes that Defendant plans to present expert testimony to the effect that Ms. Damgaard did not have the Medical Conditions and thus was not a high-risk patient.  (See id. at 3–4.)  Finally, Plaintiff contends her evidence establishes that the Medical Conditions were present in the days immediately following May 17, 2010, avoiding any issues associated with the Court's partial summary judgment ruling.  (Id. at 5–6.)

Second, Defendant looks to exclude "any claim to or evidence about medical expenses incurred before I.L.D. turns 18 years of age . . . ."  (Def.'s Mem. on Minority Med. Expenses at 1; see Def.'s Mots. in Limine at ¶ 1).  Defendant argues that under Minnesota law, a claim for the medical expenses of a minor child[5] belongs exclusively to the minor child's parent.  (Def.'s Mem. on Minority Med. Expenses at 1–2.)  According to Defendant, because Ms. Damgaard voluntarily dismissed her individual claim for I.L.D.'s minority medical expenses, and because I.L.D. does not have an obligation to pay these expenses herself, these damages cannot be sought at trial.  (Id. at 3–4.)

Plaintiff opposes this motion.  (See Pl.'s Mem. in Opp. to Def.'s Mot. in Limine Regarding Medical Expenses Incurred During Minority ("Pl.'s Opp. on Minority Med. Expenses") [Doc. No. 274].)  Plaintiff argues that Minnesota law allows a minor child to independently claim his/her age of minority medical expenses in situations like the one at

---

[5] In Minnesota, a child reaches the age of majority when he/she turns 18 years of age. Minn. Stat. § 645.451 (defining terms "minor," "adult," "majority," and "minority"); Yaeger v. Yaeger, 229 N.W.2d 137, 138 (Minn. 1975) (noting the 1973 change in Minnesota's age of majority from 21 to 18).

bar.  (Pl.'s Opp. on Minority Med. Expenses at 2–5.)  Alternatively, Plaintiff claims that it is really MDHS and BCBSM, by virtue of the statutory assignments and liens they possess, who hold the right to recover I.L.D.'s minority medical expenses.  (Id. at 5–8.)  Thus, according to Plaintiff, Ms. Damgaard "could not have dismissed this claim even if she intended to, as she had no standing to do so."  (Id. at 7.)

A pretrial conference hearing was held on December 8, 2015 to address the parties' various motions in limine.  At that hearing, the Court instructed Plaintiff to notify MDHS and BCBSM of Defendant's motion to exclude I.L.D.'s minority medical expenses and invite them to submit briefing on the subject.  Plaintiff complied, and MDHS and BCBSM responded by filing motions to intervene.  (See Mot. to Intervene by State of Minnesota, Department of Human Services [Doc. No. 335]; Mot. to Intervene by BCBSM, Inc. [Doc. No. 341].)  Both noted the statutory assignments and liens they possessed related to I.L.D.'s minority medical expenses.  (Mem. in Support of Intervention by MDHS ("MDHS's Mem.") at 1–2 [Doc. No. 336]; Mem. in Support of Mot. to Intervene by BCBSM ("BCBSM's Mem.") at 2–3 [Doc. No. 342].)

Defendant opposes the intervention of MDHS and BCBSM.  (See Def.'s Consolidated Resp. to Mots. to Intervene ("Def.'s Intervention Opp.") [Doc. No. 344].)  In relevant part, Defendant argues that MDHS and BCBSM are barred from seeking I.L.D.'s minority medical expenses by the statute of limitations for medical malpractice claims.  (Def.'s Intervention Opp. at 1–3.)  MDHS and BCBSM both replied.  (See MDHS's Reply Brief in Support of Intervention ("MDHS's Reply") [Doc. No. 347]; BCBSM's Reply Mem. in Support of Mot. to Intervene ("BCBSM's Reply") [Doc. No. 349].)  BCBSM's

Reply summarizes its position as to why Defendant's arguments regarding I.L.D.'s minority medical expenses fail as follows:

> 1) the minor has her own claim for reimbursement of medical expenses; 2) [BCBSM and MDHS] may recover as a result of the assignment of that right made by the minor (or in subrogation of the minor's right); 3) [BCBSM's and MDHS's] right to recover . . . is therefore governed by the minor's statute of limitations which has not run; 4) in the alternative, [BCBSM's and MDHS's] motion[s] to intervene relate[] back to the filing of Plaintiff's Complaint . . . ."

(BCBSM's Reply at 2.)

The Court will address Defendant's Medical Conditions Motion and Minority Med. Expenses Motion in turn.

## II.     DISCUSSION

### A.  Defendant's Motion Regarding Medical  Conditions

Defendant is correct that the Court previously precluded Plaintiff from claiming that Defendant's conduct on May 17, 2010 was negligent.  (Order dated 6/3/2015 at 20–22.) However, this ruling does not support Defendant's present motion to exclude any evidence of the Medical Conditions at trial.   The Court's prior ruling regarding Defendant's conduct on May 17, 2010 dealt exclusively with Plaintiff's failure to present evidence that the conduct of that day was the proximate cause of I.L.D.'s injuries.  (See id.)  Plaintiff espouses no intent to introduce evidence of these Medical Conditions in a way that conflicts with this ruling.  Instead, Plaintiff proposes using such evidence for a variety of other relevant and permissible purposes.

First, Plaintiff is correct that evidence of these Medical Conditions is relevant to liability.  Plaintiff intends to show that because these Medical Conditions made Ms.

Damgaard a high-risk patient, Defendant should have, but failed to, employ a different standard of care.  Plaintiff has a number of experts prepared to so testify.  This testimony certainly informs the appropriate standard of care at the time of I.L.D.'s birth.

Second, Plaintiff's argument that the Medical Conditions are relevant background information about the late stages of Ms. Damgaard's pregnancy and I.L.D.'s birth are persuasive.  Evidence of at least some of the Medical Conditions are present in several of the medical records and other documents generated after May 17, 2010.  (See Aff. of Patrick A. Thornson dated 8/26/2015, Ex. 5 [Doc. No. 281].)  To eliminate any reference to the Medical Conditions would leave confusing holes in the storyline of Ms. Damgaard's pregnancy and I.L.D.'s birth.

Third, Plaintiff correctly notes that Defendant is prepared to argue at trial that Ms. Damgaard was not a high-risk patient in part because the Medical Conditions were not present.  (See Def.'s Trial Brief at 3, 11 [Doc. No. 239].)  If Defendant elicited such testimony at trial, Plaintiff would plainly be permitted to respond by addressing whether the Medical Conditions were in fact present and the effect of their presence on the relevant standard of care.

In short, evidence of the Medical Conditions Plaintiff proposes to use at trial is relevant and more probative than prejudicial or confusing.  Plaintiff may present evidence and argument regarding the Medical Conditions as they relate to liability and where they provide relevant background.  However, pursuant to the Court's prior ruling, Plaintiff may not argue that Defendant's conduct on May 17, 2010 itself was negligent.

### B.  Defendant's Motion Regarding Minority Medical Expenses

Defendant presents two primary bases for arguing that I.L.D.'s minority medical expenses should be excluded: (1) Ms. Damgaard had exclusive claim to these expenses, a claim she voluntarily dismissed, and (2) MDHS and BCBSM have not taken the necessary, timely steps to pursue whatever interests they may have in these expenses. Although Defendant's argument regarding parents' claims to their children's minority medical expenses has some merit, it fails to acknowledge common exceptions which allow minor children to recover their minority medical expenses under circumstances nearly identical to those present here.[6]   Defendant is simply incorrect that MDHS and BCBSM have not taken the appropriate steps to preserve and pursue their interests in I.L.D.'s minority medical expenses.

### 1. I.L.D.'s claim to her minority medical expenses

In Minnesota, and generally under common law, parents have an obligation to provide for a child's necessities during minority.  See Higgins on Behalf of Higgins v. J.C. Penney Cas. Ins. Co., 388 N.W.2d 429, 430 (Minn. Ct. App. 1986); Restatement (Second) of Torts § 703(b) (1977).  This duty is meant to protect the child.  See In re Sonnenberg, 99 N.W.2d 444, 448 (Minn. 1959).  As a result of this obligation, parents may bring claims to recover their minor child's medical expenses.  See Faber v. Roelofs, 212 N.W.2d 856, 862 (Minn. 1973); Father A v. Moran, 469 N.W.2d 503, 506 (Minn. Ct.

---

[6] As an initial matter, the Court acknowledges that Minnesota case law addressing whether a minor child has a right to recover his/her minority medical expenses is sparse or non-existent.  No party, nor the Court, could locate a Minnesota case dealing with the precise issues at bar.  To the extent there is relevant Minnesota case law, it is cited here. However, because of this general lack of Minnesota authority, the Court also relies on persuasive authority from other jurisdictions.

App. 1991); <u>Higgins</u>, 388 N.W.2d at 430.  However, none of these cases hold that parents have the *exclusive* claim to their children's minority medical expenses.  <u>Faber</u>, 212 N.W.2d at 862 (recognizing a parent "has a right of action for the injured child's medical expenses" that is "essentially separate" from the child's other claims for the purpose of determining municipal liability caps); <u>Father A</u>, 469 N.W.2d at 506 ("Under traditional Minnesota common law, parents *may* recover damages based on injury to their child only for medical expenses, . . . until the child reached majority age." (emphasis added)); <u>Higgins</u>, 388 N.W.2d at 430 ("[T]he parent *may* recover for . . . [the minor's] reasonable medical and nursing expenses during minority." (emphasis added)).

The best support for Defendant's argument that a parent has the exclusive claim for his/her child's minority medical expenses is a Minnesota state district court case.  <u>See</u> <u>M.M. ex rel. Magnuson v. Oakdale Obstetrics & Gynecology, P.A.</u>, No. MP 02-10570, 2004 WL 2110716, at *1 (Minn. Dist. Ct. July 29, 2004).  There, the court found it had not erred by limiting a minor child's recovery to those medical expenses incurred after he/she reached the age of majority.  <u>Magnuson</u>, 2004 WL 2110716 at *6.  The court stated, without citing any authority, that "Minnesota has not adopted the rule that a minor's recovery can include medical expenses from the time of trial to the age of majority."  <u>Id.</u>

Respectfully, the <u>Magnuson</u> court overstates Minnesota's law on the subject.  As discussed above, there is no Minnesota case law, to this Court's knowledge, holding that a claim for a minor child's medical expenses rests exclusively with his/her parents.  In fact, Minnesota's Civil Jury Instruction Guides contradict such a conclusion:

11

> [T]here is authority to the effect that the reasonable value of necessary medical services and supplies reasonably certain to be required for the care of the minor from the time of trial until the minor reaches his majority or becomes emancipated should be treated as part of the minor's recovery, rather than as a part of the parent's recovery. [collecting cases] The Committee is of the opinion that this rule, which provides greater protection for the minor and is not prohibited by existing Minnesota case law, represents the better view.

4A Minn. Prac., Jury Instr. Guides--Civil CIVJIG 91.65 (6th ed. 2014) (citations omitted).[7]

Even where courts find the right to recover a minor child's medical expenses is generally held by the minor's parents, there are exceptions. See Eberts v. Kawasaki Motors Corp., No. CIV. A1-02-43, 2004 WL 513792, at *1 (D.N.D. Mar. 15, 2004); Balzum v. Holm, No. 09-08-C-02704, 2009 WL 7781425, at 10–20[8] (N.D. Dist. Ct. Apr. 15, 2009); Johns Hopkins Hosp. v. Pepper, 697 A.2d 1358, 1362–64 (Md. 1997); Sommers v. Hartford Acc. & Indem. Co., 277 S.W.2d 645, 649 (Mo. Ct. App. 1955); but see Bauer ex rel. Bauer v. Mem'l Hosp., 879 N.E.2d 478, 502 (Ill. App. Ct. 2007) (adhering strictly to the general rule and holding "[a]ny cause of action to recover the medical expenses is that of the parents, and if the parents are not entitled to recover,

---

[7] The Civil Jury Instruction Guides are not binding precedent, but this Court has found them to provide persuasive analysis of Minnesota's law in other situations. See J.D.O. ex rel. Oldenburg v. Gymboree Corp., No. 12-cv-71 (SRN/JSM), 2013 WL 6196970, at *10 (D. Minn. Nov. 27, 2013).

[8] Balzum is not readily accessible through the major case publishing sources, but was attached as an exhibit by Plaintiff. (See Thornson Aff., Ex. 3 [Doc. No. 275-1]) The Court references the page numbers of that case as they appear in the case itself, not the ECF pagination.

neither is the child.").  The <u>Eberts</u> court succinctly summarized the exceptions where a child may recover his/her own minority medical expenses:

> The first exception to the common law rule is where a minor child has paid or agreed to pay the expenses.  There is also an exception where the minor child is legally responsible for payment, such as by reason of emancipation or the death or incapacity of his parents.  Another exception exists where the parents have waived or assigned their right to recovery in favor of the minor child.  A final exception exists where recovery of medical expenses is permitted by statute.

2004 WL 513792 at *1 (citing <u>Garay v. Overholtzner</u>, 631 A.2d 429, 442–43 (Md. 1993)).

This Court is not convinced that Minnesota subscribes to a hard and fast rule that the right to recover a minor child's medical expenses rests solely with the parents.  Even if this were the general rule in Minnesota, the Court is persuaded that the widely recognized exceptions would apply.  At least two of those exceptions are present here: (a) I.L.D. has paid for her minority medical expenses by virtue of Minnesota's Medicaid program, which issues medical benefits directly to her, and (b) Ms. Damgaard effectively waived her right to recover I.L.D.'s minority medical expenses by dismissing her individual claim against Defendant.

### a.  I.L.D. has paid her minority medical expenses

I.L.D. has paid her minority medical expenses by virtue of Minnesota's Medicaid system, allowing her to independently claim those expenses against the Defendant.  The <u>Balzum</u> case is informative.  There, the mother of a minor child ("Plaintiff S") brought claims on the child's behalf against various healthcare professionals and providers alleging medical negligence in the labor and delivery of Plaintiff S.  <u>Balzum</u>, 2009 WL

7781425 at 1–2.  The defendants moved for partial summary judgment on the basis that Plaintiff S could not claim his own minority medical expenses.  <u>Id.</u> at 3.  The <u>Balzum</u> Court engaged in a detailed analysis of whether a minor child's parents held exclusive claim to minority medical expenses and concluded they did not given the exceptions espoused by <u>Eberts</u> and other courts.  <u>Id.</u> at 8–11.  The Court found that Plaintiff S "paid" his medical expenses, even though it was North Dakota's Medicaid program which in fact footed the bill.  <u>Id.</u> at 14–15; <u>see also</u> <u>Eberts</u> 2004 WL 513792 at *2 (concluding a minor child could claim his own minority medical expenses in part because he "paid" for them by virtue of his parents' health insurance).  "It is not necessary for [a minor child] to 'literally break open her piggy bank' for the Court to determine that she paid for her care."  <u>Balzum</u>, 2009 WL 7781425 at 15 (quoting <u>Eberts</u> 2004 WL 513792 at *2).

Here, it is uncontested that Minnesota's Medicaid program has paid for I.L.D.'s medical expenses to date.  Just as Plaintiff S and the minor child in <u>Eberts</u> "paid" for their medical expenses despite either a public or private entity footing the bill, so too has I.L.D. paid for her minority medical expenses.  The fact that Minnesota's Medicaid program required I.L.D. to sign over any claim she might have against a third-party for these minority medical expenses is further evidence she is "paying" for the benefits she received.  <u>See</u> Minn. Stat. § 256B.056, subd. 6.

### b.  I.L.D.'s parent waived any claim she had to I.L.D.'s minority medical expenses in favor of I.L.D.

Ms. Damgaard, by voluntarily dismissing her claim against Defendant, waived any claim she had to I.L.D.'s minority medical expenses in favor of I.L.D.  The <u>Eberts</u> case is

informative.  There, the plaintiff ("Eberts") brought a claim for damages he suffered in an accident that occurred while he was a minor.  <u>Eberts</u> 2004 WL 513792 at *1.  The defendants moved for partial summary judgment seeking to dismiss any medical expenses incurred while Eberts was a minor.  <u>Id.</u>  These expenses were paid by Eberts' parents' insurer ("John Alden"), who was allowed to intervene.  <u>Id.</u>  The defendants argued that because any claim by Eberts' parents for his minority medical expenses was time-barred, John Alden's claims for the same were similarly barred.  <u>Id.</u>

The <u>Eberts</u> Court rejected the defendants' argument.  <u>Id.</u> at *2.  In part, it found that Eberts himself had a claim to his minority medical expenses because his parents waived their right to recover these expenses when they failed to assert a claim within the statute of limitations.  <u>Id.</u>  "By not filing their own complaint on or before [the statute of limitations date], knowing that [Eberts] made a claim for medical expenses, Eberts' parents waived their claim in favor of him."  <u>Id.</u>  Because Eberts filed within the limitations period, he—presumably on behalf of John Alden—was allowed to seek his minority medical expenses.  <u>Id.</u>

Here, it is uncontested that I.L.D. made a timely claim for these damages within the four year statute of limitations for medical malpractice claims in Minnesota.  <u>See</u> Minn. Stat. § 541.076; (<u>see</u> Am. Compl. at ¶¶ 31, 33; Compl. dated 8/12/2013 at ¶¶ 31, 33 (Plaintiff first brought her claims in 2013, well within the four year statute of limitations).)  Initially, Ms. Damgaard also asserted her own individual claim for I.L.D.'s minority medical expenses, but later voluntarily dismissed that claim.  <u>See</u> <u>infra</u> Part I.B. Ms. Damgaard's voluntary dismissal of her claim had the same practical effect as Eberts'

parents not filing a claim for his minority medical expenses within the statute of limitations period—it waived that claim in favor of I.L.D.  To deny I.L.D. the opportunity to recover her minority medical expenses under these circumstances would be manifestly unjust.

> Assuming limitations has barred parental claims for [minority medical expenses], the doctrine of necessaries protects an injured minor's right to recover from a tortfeasor medical expenses that his or her parents are ill-able to afford and for which he or she ultimately may be liable.  Otherwise, the child would be twice victimized—once at the hands of the tortfeasor, and once by parents who, for whatever reason, failed to timely prosecute their claims for medical expenses.  We cannot countenance a result that would leave the only innocent victim in such a transaction uncompensated for his or her injuries and potentially beholden to the compelled generosity of the taxpayer.  Public policy and justice demand that an injured minor's right to recover medical expenses in his or her own name after limitations has barred parental claims begin where the parents' financial ability to provide for medical necessaries ends.

Johns Hopkins Hosp., 697 A.2d at 1365–66.  The fact that MDHS and BCBSM have paid for I.L.D.'s minority medical expenses does not alter this conclusion.  If Defendant is liable for I.L.D.'s medical expenses, it should be held to account for those expenses and not be allowed to unjustly benefit from the existence of public welfare programs.  See In re Rosckes v. Cty. of Carver, 783 N.W.2d 220, 224 (Minn. Ct. App. 2010) ("Medical assistance, in turn, was intended to ensure medical care for persons who lacked the resources to pay for it, and to be the payor of last resort.").

### 2.  MDHS and BCBSM

MDHS and BCBSM are not time-barred from pursuing their claims for the minority medical benefits they have provided I.L.D.  In fact, MDHS and BCBSM have options as to how they might proceed at this time.

As discussed above, in order to receive medical assistance benefits, both I.L.D. and Ms. Damgaard assigned any claim they had to I.L.D.'s minority medical expenses to MDHS and BCBSM.  See supra Part I.A.  MDHS and BCBSM also possess statutory liens on any recovery for these expenses I.L.D. might receive.  See id.  Finally, both are entitled to statutory subrogation rights for any recovery related to these expenses.  See id. Armed with these rights and interests, MDHS and BCBSM have choices as to how they protect their interests in any recovery for I.L.D.'s minority medical expenses.

For instance, MDHS and BCBSM might actively pursue a claim against Defendant.  This could include "initiating a lawsuit, participating in a lawsuit initiated by the [medical assistance] recipient, or taking part in settlement negotiations." Martin ex rel. Hoff v. City of Rochester, 642 N.W.2d 1, 25 n.29 (Minn. 2002).  In Martin, a mother ("Martin") brought various claims against the defendants on behalf of her disabled son ("Hoff") seeking medical expenses and other damages.  Martin, 642 N.W.2d at 6.  Hoff received medical assistance benefits through the State of Minnesota ("the State").  Id. The State was involuntarily joined to the suit by Martin after its presence was found necessary because of a medical assistance lien it held on the claims.  Id.  Upon being joined through impleader, the State denied that it was an appropriate plaintiff in the matter and claimed that its lien did not require that the State be named as a plaintiff.  Id. Instead, the State filed a cross-claim against Martin asserting the right to be reimbursed for the medical expenses it paid on Hoff's behalf from any judgment, award, or settlement.  Id.  The State then took no significant part in the litigation and did not independently pursue a claim against the defendants.  Id.

Martin ultimately negotiated a settlement with the defendants.  Id.  The settlement encompassed all of Martin's claims and was approved by the district court, which required that Martin and the State each release the defendants.  Id. at 6–7.  Martin and the State then pursued the dispute between them as to what amount of the settlement the State was entitled to by virtue of its lien.  Id. at 7.  Ultimately, the Minnesota Supreme Court remanded the case so that the district court could determine what portion of the settlement represented the State's claim to the medical assistance benefits it provided Hoff.  Id. at 27.

The focus of Martin was to resolve whether Minnesota's medical assistance lien statute—Minn. Stat. § 256B.042—was preempted by a federal anti-lien statute.[9]  See generally Martin, 642 N.W.2d 1.  As part of its argument that Minn. Stat. § 256.042 was not preempted, the State claimed that finding preemption would deny it the means to recover Medicaid payments from third-party tortfeasors.  Id. at 24.  The Martin Court disagreed.  See id. at 24–25.  Importantly, the Court noted that the assignment the State receives from a Medicaid beneficiary under Minn. Stat. § 256B.056,

> enables the state to acquire the recipient's property rights to this particular claim and to take independent legal action, or, as in this case, to be joined as a party to the recipient's action. Thus, the state can take an active role as a plaintiff in its own right and does not have to rely on the efforts of others to ensure a recovery of medical assistance expenses.

Id.

---

[9] The ultimate resolution of this preemption question is not at issue in the matters before the Court and will not be discussed further.

Martin informs BCBSM's and MDHS's options in the present matter. As discussed above, I.L.D. brought timely claims against Defendant. By virtue of Minn. Stat. § 256B.056, subd. 6, MDHS and BCBSM hold assigned rights to the portion of I.L.D.'s claim that represents her minority medical expenses. Although these assignments enabled BCBSM and MDHS to take independent action against Defendant, or to join Plaintiff's action at any time, they are not required to do so. Martin highlights the affirmative steps a Medicaid assignee might take, but nothing in that decision suggests that these are the only means to preserve or pursue such assigned interests. See Martin, 642 N.W.2d at 25, n.29 (describing how the State must take "appropriate steps" to pursue its assigned interests).

Notably, the State was involuntarily joined in Martin and successfully preserved its assigned interest by asserting a cross-claim against Martin based on its lien, not by bringing any claim against the defendants. Other cases suggest it is possible for a Medicaid assignee/lien holder to "sit back" and pursue its interests late in the litigation. See Rodriguez ex rel. Rodriguez v. S., No. A09-1169, 2010 WL 773379 (Minn. Ct. App. Mar. 9, 2010) (state agency allowed to intervene to assert its assigned interest in the medical expenses paid to a Medicaid recipient after recipient and third-party reached a settlement); Adams v. Toyota Motor Corp., No. 10-cv-2802 (ADM/JSM), 2015 WL 3742898, at *4, *21 (D. Minn. June 15, 2015) (state agencies intervened, asserting claim to medical assistance benefits paid, only after a jury verdict). MDHS argues this sort of late involvement is common practice. (MDHS Reply at 3–4.) In fact, MDHS and BCBSM might not intervene at all and simply assert their lien interests on any award or

settlement in this matter through an independent claim at a later date.[10]  See Minn. Stat. §

256B.042, subd. 2(b) (allowing state agencies to enforce their medical assistance liens

within one year of the resolution of a recipient's claim against a third-party).  The Court

holds that it is not necessary for MDHS or BCBSM to independently pursue their claims

for I.L.D.'s minority medical expenses against Defendant, or to intervene at this time, to

preserve those rights.[11]

Even if MDHS and BCBSM were required to bring their own claims directly

against Defendant, they would not be barred from "stepping in" to pursue I.L.D.'s

already filed claims for her minority medical expenses.  An action may not be dismissed

for failure to prosecute in the name of the real party in interest unless, after an objection,

that party is given a reasonable amount of time to join or be substituted.  Fed. R. Civ. P.

17(a)(3).  Defendant's assertion that BCBSM and MDHS are now time-barred from

bringing claims for I.L.D.'s minority medical expenses, (Def.'s Intervention Opp. at 1–3),

raised only after Defendant's motion in limine challenged the recovery of these expenses

for the first time, is an objection that I.L.D. is not the real party in interest.  BCBSM and

MDHS promptly sought to intervene after being made aware of Defendant's claims about

I.L.D.'s minority medical expenses.  If allowed to intervene as the real parties in interest,

BCBSM's and MDHS's claims would relate back to when I.L.D.'s original complaint

---

[10] The Court offers no opinion about how and when MDHS and BCBSM should pursue
their lien interests in this matter.

[11] Again, the Court offers no opinion about whether, when, and to what end intervention
might be appropriate or strategically beneficial.

was filed, eliminating any statute of limitations concerns.  <u>See</u> Fed. R. Civ. P. 17(a)(3)

("After ratification, joinder, or substitution, the action proceeds as if it had been

originally commenced by the real party in interest.")

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant's Mots. *in Limine* at ¶ 4 [Doc. No. 244] is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff may present evidence of preeclampsia, gestational hypertension, or other blood pressure issues ("the Medical Conditions") at trial for the purposes set forth in this Order.  <u>Supra</u> Part 2.A.  However, Plaintiff many not introduce evidence of the Medical Conditions to argue that Defendant's conduct on May 17, 2010 was negligent.

2. Defendant's Mots. *in Limine* at ¶ 1 [Doc. No. 244] is **DENIED**.

3. Plaintiff Intervenors State of Minnesota, Department of Human Services and BCBSM, Inc. **shall** file letters with the Court on or before February 1, 2016, addressing whether, in light of this Order, they intend to pursue intervention at this time.

Dated:  January 19, 2016                     s/ Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge